T.C. Memo. 2000-333


UNITED STATES TAX COURT


ROBERT COTTON, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SHARON C. COTTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 6701-99, 7005-99.          Filed October 30, 2000.


Robert Cotton, Jr., and Sharon C. Cotton, pro se.

<u>Michele A. Yates</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PANUTHOS, <u>Chief Special Trial Judge</u>: Respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties as follows:

Robert Cotton, Jr., Docket No. 6701-99

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|---------------------|
| 1994 | $6,749 | $514 |
| 1995 | 8,007 | 420 |
| 1996 | 4,451 | 428 |

Sharon Cotton, Docket No. 7005-99

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|---------------------|
| 1994 | $2,684 | $336 |
| 1996 | 4,013 | 545 |

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by petitioners (hereinafter referred to individually as Mrs. Cotton and Mr. Cotton),[1] the issues for

---

[1]     Mr. Cotton concedes that he is not entitled to the following:  (1) Head-of-household filing status under sec. 2(b) for 1994 and 1996; (2) single filing status for 1995; (3) dependent care credit pursuant to sec. 21 in the amount of $911 for 1994 (respondent erroneously categorized the credit as the child care credit under sec. 24, which did not go into effect until 1998); (4) Schedule C, Profit or Loss From Business, loss in the amount of $10,150 for 1995; (5) deduction for a safety deposit box in 1995; (6) deductions for personal property and real estate taxes in the respective amounts of $600 and $1,300 for 1994 and 1995; and (7) deductions for charitable contributions in the amounts of $4,650, $4,150, and $3,701 for 1994, 1995, and 1996, respectively.

Mrs. Cotton concedes that she is not entitled to the
(continued...)

decision are: (1) Whether petitioners are entitled to dependency exemption deductions for various persons; (2) whether Mrs. Cotton is entitled to the earned income credit under section 32; (3) whether Mrs. Cotton is entitled to the standard deduction in 1996; (4) whether Mr. Cotton is entitled to a deduction for medical expenses in 1994 and 1996; (5) whether Mr. Cotton is entitled to deduct tax preparation fees; (6) whether Mr. Cotton is entitled to deduct the cost of his work clothing and protective equipment; (7) whether Mr. Cotton is entitled to a deduction for real property taxes; and (8) whether petitioners are liable for the accuracy-related penalty pursuant to section 6662(a).[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the related exhibits are incorporated

---

[1](...continued)
following: (1) Head-of-household filing status under sec. 2(b) for 1994; (2) single filing status for 1996; and (3) dependent care credits pursuant to sec. 21 in the amounts of $576 and $1,104 for 1994 and 1996, respectively (respondent incorrectly categorized the credits as child care credits under sec. 24).

[2] The notices of deficiency contain adjustments to petitioners' itemized deductions. These are computational adjustments which will be affected by the outcome of the other issues to be decided, and we do not separately address them.

herein by this reference.  At the time of filing the petitions in these cases,[3] petitioners resided in Forestville, Maryland.

Petitioners were married in 1985 and were married during the years at issue.  Mr. Cotton worked as an engineer for the U.S. Department of the Navy, where he operated boilers and chillers. Mrs. Cotton worked as a patent clerk for the U.S. Department of Commerce.  Petitioners lived in a two-bedroom apartment in 1994 and 1995, and they moved to a five-bedroom house in 1996.  Mr. Cotton's adjusted gross income was $37,575 in 1994 and $48,380 in 1996.

Several individuals lived in petitioners' household between 1994 and 1996.  Samuel Douglas, petitioners' son, lived with petitioners between 1994 and 1996.  Samuel Douglas graduated high school in 1994 or 1995.  Jerome Douglas, Mrs. Cotton's brother, periodically stayed with petitioners between 1994 and 1996. Jerome Douglas was ill during the period at issue.  Jerome Douglas slept at petitioners' home on weekends in 1994. Shirleetta Douglas,[4] Mrs. Cotton's sister, periodically stayed

---

[3]     Mr. and Mrs. Cotton each filed separate income tax returns for the years in issue.  Separate notices of deficiency were issued to each petitioner and a separate petition was filed by each petitioner.  By order dated Apr. 10, 2000, the dockets were consolidated.

[4]     Shirleetta Douglas' first name is inconsistently spelled throughout the record and exhibits as Sharleta, Sharletta and Shirleetta.  For consistency, we shall refer to her as Shirleetta Douglas.

with petitioners between 1994 and 1996. Shirleetta Douglas'
residence was located in the same neighborhood as petitioners'
residence. Jerome Douglas also lived with Shirleetta Douglas
during the period at issue. Shirleetta Douglas' children,
Shaquita and Kevin Douglas, occasionally lived with petitioners
between 1994 and 1996. Eula Cotton (Mr. Cotton's sister), Kevin
Cotton, Starlesha Cotton, Maurice Cotton, and Johnny Gray (Mr.
Cotton's nephews and niece) intermittently lived with petitioners
during the period at issue. None of the claimed dependents, with
the exception of Samuel Douglas, lived with petitioners for an
entire year, and each of the claimed dependents lived with
petitioners for 6 months or less per year.

Samuel Douglas worked in 1996 and received wages.[5]
Shirleetta Douglas received "Section 8" housing during the period
at issue. Petitioners purchased groceries for the household.
Petitioners took the children to school, but petitioners did not
purchase clothing or pay for any other expenses for the claimed
dependents.

Petitioners filed separate Federal income tax returns for
the years in issue. Mr. Cotton, on his 1994, 1995, and 1996
Federal income tax returns, and Mrs. Cotton, on her 1994 and 1996

---

[5]     The amount received has not been made part of the
record.

Federal income tax returns, claimed the following dependency exemption deductions:

### Robert Cotton, Jr.

| Years | Name of Dependent | Relationship to Petitioner |
|---|---|---|
| 1994 | Maurice Cotton | Nephew (minor)[1] |
| 1994, 1996 | Johnny Gray | Nephew (minor)[2] |
| 1994 | Starlesha Cotton | Niece (minor)[3] |
| 1994 | Kevin Cotton | Nephew (minor)[4] |
| 1995, 1996 | Jerome Douglas | Brother-in-law[5] |
| 1995 | Samuel Douglas | Son |
| 1995 | Shirleetta Douglas | Sister-in-law[6] |
| 1996 | Eula Cotton | Sister[7] |

[1]  Mr. Cotton reported Maurice Cotton as his foster child.

[2]  Mr. Cotton reported Johnny Gray as his foster child in 1994 and his son in 1996.

[3]  Mr. Cotton reported Starlesha Cotton as his foster child.

[4]  Mr. Cotton reported Kevin Cotton as his foster child.

[5]  Mr. Cotton reported Jerome Douglas as his brother in 1995 and as "other" in 1996.

[6]  Mr. Cotton reported Shirleetta Douglas as his sister.

[7]  Mr. Cotton reported Eula Cotton as "other" in 1996.

### Sharon Cotton

| Years | Name of Dependent | Relationship to Petitioner |
|---|---|---|
| 1994 | Kevin Douglas | Nephew (minor)[1] |
| 1994, 1996 | Samuel Douglas | Son |
| 1994, 1996 | Shirleetta Douglas | Sister |
| 1994 | Jerome Douglas | Brother |
| 1996 | Shaquita Douglas | Niece (minor)[2] |
| 1996 | Starlesha Cotton | Niece by marriage(minor)[3] |
| 1996 | Kevin Cotton | Nephew by marriage (minor)[4] |

[1]  Mrs. Cotton reported Kevin Douglas as her foster child.

[2] Mrs. Cotton reported Shaquita Douglas as her foster child.

[3] Mrs. Cotton reported Starlesha Cotton as her niece.

[4] Mrs. Cotton reported Kevin Cotton as her nephew.

Mrs. Cotton claimed earned credits in the amounts of $640 and $1,152 in 1994 and 1996, respectively. Mr. Cotton claimed the following deductions:

|  | 1994 | 1995 | 1996 |
|---|---|---|---|
| Medical expenses | $10,001 | --- | $3,980 |
| Tax preparation | 200 | 200 | 225 |
| Unreimbursed employee expenses | 5,700 | 7,000 | 4,205 |
| Real estate tax | --- | --- | 2,804 |

Respondent disallowed the dependency exemption deductions (except for Samuel Douglas in 1994) claimed by petitioners because petitioners did not establish that they provided more than one-half of the support for any of the claimed dependents. Respondent disallowed Mrs. Cotton's earned income credits, on two theories: First, she did not establish that she had a qualifying child under section 32(a); second, she did not file a joint return with Mr. Cotton. Respondent disallowed the deductions for medical expenses, tax preparation fees, unreimbursed employee expenses, and real property taxes because Mr. Cotton did not establish that he paid these amounts for the reasons claimed.

Since the disallowed deductions for 1994 and 1995 reduced Mr. Cotton's total itemized deductions to amounts less than the standard deduction, respondent disallowed the other itemized

deductions and allowed Mr. Cotton the standard deduction for 1994 and 1995.  Respondent disallowed the standard deduction for Mrs. Cotton in 1996 because Mr. Cotton itemized deductions on his separate return.

OPINION

Deductions are a matter of legislative grace, and taxpayers must comply with the specific requirements for any deduction claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers must maintain adequate records to substantiate the amount of credits and deductions claimed.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

1.  Dependency Exemption Deductions

A taxpayer is permitted to claim a deduction for personal exemptions.  See sec. 151(a).  A taxpayer may claim an exemption for dependents.  See sec. 151(c)(1).  A taxpayer's son, sister, brother, sister-in-law, brother-in-law, niece, and nephew qualify as dependents so long as the taxpayer provided more than half of the support to each dependent.  See sec. 152(a)(1), (3), (6), (8); sec. 1.152-1(a)(1), Income Tax Regs.  Further, a taxpayer may claim a dependency exemption deduction for an unrelated individual who has as his principal place of abode the home of the taxpayer, so long as the taxpayer provided more than one-half of the support to the unrelated individual.  See sec. 152(a)(9).

The level of support is determined by the support test, in which the total amount of support from all sources is compared with the amount of support actually provided by a taxpayer.  The taxpayer must initially demonstrate, by competent evidence, the total amount of the support furnished by all sources for the taxable years at issue.  See Turay v. Commissioner, T.C. Memo. 1999-315; Keegan v. Commissioner, T.C. Memo. 1997-511; sec. 1.152-1(a)(2)(i), Income Tax Regs.  If the total amount of support is not established, then it is generally not possible to conclude that the taxpayer provided more than half of the support to the claimed dependents.  See Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971); Batson v. Commissioner, T.C. Memo. 2000-172; Butler v. Commissioner, T.C. Memo. 1998-355; Smith v. Commissioner, T.C. Memo. 1997-544.

From a review of this record, we cannot conclude that either petitioner provided more than one-half of the support for any of the claimed dependents at issue.  We are unsure as to the total amount of support each dependent received from all sources.  The record is also silent as to the amount of support each dependent received from either of petitioners.  Therefore, respondent's determination is sustained.

2.  Earned Income Credit

Section 32(a) permits an "eligible individual" to claim an earned income credit against the individual's income tax

liability. An eligible individual is defined in section 32(c)(1)(A) as either (1) an individual who has a qualifying child for the taxable year, or (2) an individual who does not have a qualifying child for the taxable year, if the individual's principal place of abode is the United States for more than one-half of the taxable year, the individual is at least 25 years of age but has not reached the age of 65 years before the close of the taxable year, and the individual is not a dependent for whom a deduction is allowable under section 151 to another taxpayer. A married individual will not be entitled to the earned income credit unless he or she files a joint return. See sec. 32(d); Madrigal v. Commissioner, T.C. Memo. 1998-345; sec. 1.32-2(b)(2), Income Tax Regs.

Petitioners were married at the end of 1994 and 1996. Since Mrs. Cotton did not file joint returns for 1994 and 1996, she is not entitled to the earned income credit for either of these tax years.

### 3. Mrs. Cotton's Standard Deduction

Generally, a taxpayer can elect to itemize deductions or claim the standard deduction. See sec. 63(b), (c)(1). If married individuals file separately and one spouse itemizes deductions, then the other spouse is not entitled to the standard deduction. See sec. 63(c)(6)(A). Petitioners were married during 1996 and filed separately. Since Mr. Cotton itemized his

deductions in 1996, Mrs. Cotton is not entitled to the standard deduction for 1996.

4.    Medical Expenses

A taxpayer may deduct expenses incurred for medical care and dental expenses to the extent that the expenses exceed 7.5 percent of the taxpayer's adjusted gross income.  See sec. 213(a).  Medical care expenses includes amounts paid for insurance premiums.  See sec. 213(d)(1)(D).  To substantiate medical and dental expenses under section 213, a taxpayer must provide the name and address of each person to whom payment was made and the amount and date of each payment.  See sec. 1.213-1(h), Income Tax Regs.

At trial, Mr. Cotton estimated that he paid $1,638 for medical insurance premiums and $500 in other medical expenses (for copayments and emergency room visits) in 1996.  The record is unclear if Mr. Cotton estimates that he paid a similar amount in 1994, and we assume, for the purposes of this opinion, that Mr. Cotton estimates that he paid $2,138 for medical expenses in 1994 and 1996.  Mr. Cotton's adjusted gross income was $37,575 in 1994 and $48,380 in 1996.  The medical expenses estimated by Mr. Cotton do not exceed 7.5 percent of his gross income ($2,818.13 in 1994 and $3,628.50 in 1996).  Mr. Cotton is not entitled to a deduction under section 213 for 1994 and 1996.

Even if the amount exceeded 7.5 percent of his adjusted gross income, Mr. Cotton failed to substantiate his medical expenses under section 1.213-1(h), Income Tax Regs. Mr. Cotton did not indicate the recipient of any of the payments. In regards to the $500 Mr. Cotton spent for copayments and emergency room visits, Mr. Cotton did not indicate when the payments were made, the name of the patient, or the reason for the treatment. We hold for respondent.

5. Tax Preparer's Fees

A taxpayer may deduct ordinary and necessary expenses incurred in connection with the determination, collection, and refund of taxes. See sec. 212(3). Such deductible expenses include expenses incurred in connection with the preparation of tax returns. See sec. 1.212-1(l), Income Tax Regs.

Where a taxpayer establishes that he has incurred certain kinds of expenses but is unable to substantiate the precise amount of the expenses, we may estimate the amount of the deductible expenses. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot estimate deductible expenses, however, unless the taxpayer presents evidence sufficient to provide some rational basis on which estimates may be made. See Williams v. United States, 245 F.2d 559 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Mr. Cotton claimed a deduction of $225 in 1996 for tax preparation fees.[6]  At trial, Mr. Cotton provided credible testimony that he incurred expenses for the preparation of his tax return in the amount of $225.  Accordingly, we conclude that Mr. Cotton is entitled to a deduction of $225.

6.  Work Clothing

Work clothing may be deductible under section 162 if a taxpayer can establish the following:  (1) The clothing was required or essential in the taxpayer's employment; (2) the clothing was not suitable for general or personal wear; (3) and the clothing is not so worn.  See Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Kozera v. Commissioner, T.C. Memo. 1986-604.  Mr. Cotton deducted unreimbursed employee business expenses in the amount of $5,700, $7,000, and $4,205 in 1994, 1995, and 1996, respectively.  Mr. Cotton testified that he spent $800 to $900 per year for uniforms, safety shoes, and safety glasses.  He did not have any other business expenses related to his employment with the U.S. Department of the Navy.  We have held that expenses for this type of clothing and protection are deductible.  See Kozera v. Commissioner, supra; Jeffers v. Commissioner, T.C. Memo. 1986-285; Boback v. Commissioner, T.C.

_____

[6]    Mr. Cotton is not entitled to a deduction for 1994 and 1995.  After concessions and our holding, Mr. Cotton's itemized deductions for 1994 and 1995 do not exceed the standard deduction.  See sec. 63(c).

Memo. 1983-198.  We are satisfied that Mr. Cotton did incur some expenses for these items.  See Cohan v. Commissioner, supra.  We hold that Mr. Cotton incurred $800 in expenses in each of the years 1994, 1995, and 1996.[7]

7.  Real Estate Taxes

Generally, State and local real property taxes are deductible in the year in which they are paid or accrued.  See sec. 164(a)(1); sec. 1.164-3(b), Income Tax Regs.

In 1996, Mr. Cotton deducted $2,804 for real property taxes. Mr. Cotton did not provide evidence of payment, such as books, records, canceled checks, or property tax assessments, to substantiate the amount of tax paid or accrued in 1996. Therefore, Mr. Cotton is not entitled to a deduction for real property taxes for 1996.

8.  Accuracy-Related Penalty

Respondent determined that each petitioner is liable for the accuracy-related penalty under section 6662(a) for 1995.  The accuracy-related penalty is equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of rules

---

[7]  Mr. Cotton is not entitled to a deduction for 1994 and 1995 as previously indicated.  After concessions and our holdings, Mr. Cotton's itemized deductions for 1994 and 1995 do not exceed the standard deduction.  See sec. 63(c).  As to 1996, sec. 67 imposes a 2-percent floor on miscellaneous itemized deductions.  It would appear that the $800 does not exceed the 2-percent floor.

or regulations. See sec. 6662(a) and (b)(1). "Negligence" consists of any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. See sec. 6662(c). "Disregard" consists of any careless, reckless, or intentional disregard. Id.

An exception applies to the accuracy-related penalty when the taxpayer demonstrates (1) there was reasonable cause for the underpayment, and (2) the taxpayer acted in good faith with respect to such underpayment. See sec. 6664(c). Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances. The most important factor is the extent of the taxpayer's effort to assess the proper tax liability. See Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs. Section 1.6664-(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." See Neely v. Commissioner, 85 T.C. 934 (1985).

A taxpayer is generally charged with knowledge of the law. See Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992). Ignorance of the law is not always a defense to the imposition of

section 6662(a).  A taxpayer must take reasonable steps to determine the law and apply it.  See id.

It is the taxpayer's responsibility to establish that he or she is not liable for the accuracy-related penalty imposed by section 6662(a).  See Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989).

Mr. Cotton testified that petitioners' tax preparers fabricated several deductions, such as the Schedule C deductions for a nonexistent plumbing business.  Mr. Cotton was aware of the inflated deductions, and he quarreled with his preparer regarding the accuracy of the deductions.  Petitioners nevertheless filed the returns.  The record does not indicate that either petitioner took reasonable steps to properly report the correct tax liability.  On the basis of the entire record, we conclude petitioners have not established that the underpayment was due to reasonable cause or that either petitioner acted in good faith.  Accordingly, we hold each petitioner is liable for the accuracy-related penalty.

To reflect the foregoing,

Decisions will be entered

under Rule 155.